Filed 6/27/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| SHEILA PRATO, | |
| Plaintiff and Appellant, | G064139 |
| v. | (Super. Ct. No. 30-2021 01234131) |
| THOMAS JOHN GIOIA et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from a judgment of the Superior Court of Orange County, Jonathan S. Fish, Judge. Reversed and remanded with directions.

Sheila Prato, in pro. per., for Plaintiff and Appellant.

Law Offices of Thomas P. Aplin and Thomas P. Aplin for Defendant and Respondent Thomas John Gioia.

Morasse Collins & Clark and Desmond J. Collins for Defendant and Respondent Lee & Associates Commercial Real Estate Services, Inc.– Irvine.

\* \* \*

"The American legal profession exists to help people resolve disputes cheaply, swiftly, fairly, and justly." (*Karton v. Ari Design & Construction, Inc.* (2021) 61 Cal.App.5th 734, 747.) The legitimacy of the legal profession also relies on attorneys acting with both civility and rectitude, especially when dealing with the courts and with nonattorneys.

In appellant Sheila Prato's case, the profession failed to deliver on most, if not all, of these objectives–especially the one regarding civility and rectitude. Ms. Prato appeals an award of over $70,000 in attorney fees entered jointly and severally against her and her company, Prato Properties, LLC (Prato LLC), after their civil complaint was dismissed without prejudice due to their failure to appear at trial. (See Code Civ. Proc., § 581, subd. (b)(5).)[1]

At the time the case was set to go to trial, however, plaintiffs' attorney of record, Timothy McFarlin, had been rendered inactive and ineligible to practice law by the State Bar of California while disciplinary proceedings against him were pending. It appears Ms. Prato was not aware of this at the time. But her opponents in the case–respondents Thomas John Gioia and Lee & Associates (the Lee Firm)–were. And it is what their counsel did with this information that troubles us.

At its core, this case presents a disturbing litany of mistakes by a profession we deem far too estimable to make so many. And there is plenty of culpability to go around, starting with Ms. Prato's own attorney, who failed to inform her he was no longer eligible to practice law. But the circle grows. We see nothing in the record to show the State Bar took steps to inform Ms.

---

[1] All undesignated statutory references are to the Code of Civil Procedure.

Prato (or any of McFarlin's other clients) of his status once he entered disciplinary proceedings. Respondents' attorneys certainly seemed to be in no hurry to flag for the court or Ms. Prato that she lacked representation; even though they should have known it was impacting the case. And the record does not show the trial court took any action even when informed about McFarlin's proceedings.

What might have changed the course of events here? We have an idea. Perhaps just a modicum of courtesy on the part of respondents' attorneys would have made all the difference. Something to the effect of: "Your Honor, we're not sure Ms. Prato knows her lawyer is ineligible to practice." Or, "Your Honor, with the court's permission, may we send notice to Ms. Prato directly to ensure she is aware of her counsel's status?"

We do not know why respondents' counsel chose not to make such nominal attempts at basic professionalism and civility. What we do know is the attorneys' conduct was more tactical than anything else–they obtained a dismissal of Ms. Prato's lawsuit while she was unrepresented, and then had the audacity to move for an award of attorney fees against her. This conduct does not comport with the professional and ethical standards we expect from lawyers. But, as it happens, neither does it comport with the law on the books.

Under the authority of section 286, a party represented by counsel who dies or is removed or suspended from the practice of law is entitled to written notice of same before further proceedings may be taken against her. Clearly, respondents' counsel knew about the requirements of section 286, because they provided notice under its auspices after filing motions for attorney fees after trial. But they did not serve Ms. Prato with such notice *before* trial, when she would have been in a better position to

3

affect the outcome of the case (and potentially thwart respondents' plan to seek attorney fees in the first place). And they did not serve the notice in time to allow Ms. Prato to meet statutory deadlines to try and vacate the dismissal of her case.

When she did finally receive notice from respondents under section 286, Ms. Prato appeared in court, hired new counsel, and filed an opposition pointing out respondents' failure to serve such notice earlier. But to no avail. The trial court granted the fee motions anyway.

On appeal, Ms. Prato[2] argues it was unreasonable for the court to enter an attorney fee award against her when respondents were aware before trial that her lawyer was in disciplinary proceedings.

She is correct.

Inactive status renders an attorney ineligible to practice law. Thus, McFarlin could not legally represent Ms. Prato at trial. And a litigant abandoned by counsel is not the same as a self-represented litigant, who might be expected to appear on her own. We therefore hold that an attorney whom the State Bar of California has made involuntarily inactive and ineligible to practice law meets the definition of an attorney who has been "removed or suspended" for purposes of section 286. And any party who

---

[2] A notice of appeal was only filed on behalf of Ms. Prato, not Prato LLC. While Ms. Prato asserts that both she and Prato LLC are appealing, no counsel has appeared or filed an appeal on Prato LLC's behalf. "[U]nder a long-standing common law rule of procedure, a corporation, unlike a natural person, cannot represent itself before courts of record in propria persona, nor can it represent itself through a corporate officer, director or other employee who is not an attorney. It must be represented by licensed counsel in proceedings before courts of record." (*CLD Construction, Inc. v. City of San Ramon* (2004) 120 Cal.App.4th 1141, 1145.)

becomes aware that an opponent's attorney has been made involuntarily inactive and ineligible to practice law by the State Bar must promptly give notice to his or her opponent under section 286. We also hold that trial courts, when notified of an attorney's involuntarily inactive status, are encouraged to order counsel to issue section 286 notice to the affected party before further proceedings may be taken against him or her.[3]

In this case, not only did respondents fail to provide section 286 notice to Ms. Prato in a timely fashion, it appears to this court based on this record, they took advantage of her unrepresented status during this litigation. Such conduct by members of the bar cannot be countenanced. We thus reverse and remand for the trial court to reconsider respondents' motions for attorney fees in light of section 286.

STATEMENT OF FACTS AND PROCEDURAL HISTORY

Ms. Prato was a partner and principal owner of Mocha Family Limited Partnership (Mocha), which owned a commercial property located on Via Lido in Newport Beach. In June 2015, Ms. Prato, acting on behalf of Mocha, leased the property to KEP MTM1, LLC d/b/a Klein Epstein & Parker (Lessee). The Lee Firm, represented by its senior vice president, Gioia, acted as a dual agent for both Mocha and the Lessee in the transaction. The lease required that the lessor approve any sublease of the demised premises. It also contained an attorney fee provision.

In June 2016, Mocha conveyed the property to Prato LLC. The lease was amended to reflect the new lessor. However, in March 2017, Ms.

---

[3] This is in addition to the procedures detailed in Business & Professions Code section 6180 et seq. pertaining to the cessation of an involuntarily inactive attorney's law practice.

5

Prato alleged, Lessee sublet the premises to a third party without approval. Ms. Prato alleged Gioia and the Lee Firm assisted Lessee in its endeavor to sublet the premises, and failed to inform her of what was occurring. She and her LLC terminated the lease.

On November 30, 2021, Prato LLC and Ms. Prato, represented by McFarlin's firm, McFarlin LLP, filed a complaint against Gioia and the Lee Firm for breach of fiduciary duty and intentional interference with contract. Listed on the caption as attorneys of record were McFarlin himself and an attorney named Fernando Leone. The prayer for relief contained a request for attorney fees, presumably pursuant to the lease.

Respondents had little luck proceeding with discovery because Prato LLC and Ms. Prato were not responding to requests and notices. The lack of responsiveness from the plaintiffs' side led to multiple discovery motions.

On September 15, 2022, the assigned judge granted Gioia's motion to deem his requests for admission admitted by Ms. Prato and Prato LLC. On November 21, 2022, the court granted the Lee Firm's motion to compel Ms. Prato's deposition.

Perhaps more worrisome was that McFarlin was incommunicado. Gioia's counsel, Thomas Aplin, averred that he had tried since September of 2022 to get in contact with McFarlin, without any success. For his part, the Lee Firm's counsel, Desmond Collins, averred he tried to contact McFarlin via e-mail, letter, and voicemail messages since May of 2022, but he had never been able to speak to McFarlin directly either.

On January 25, 2023, disciplinary charges were filed in State Bar Court against McFarlin.

According to his billing records, on or about February 6, 2023, Attorney Collins reviewed the State Bar's website and discovered the pending disciplinary action. Attorney Collins communicated with Attorney Aplin about it that same day.[4] The following day, on February 7, Attorney Collins' billing records indicate he prepared an e-mail to his client "regarding State Bar disciplinary action against Plaintiff's counsel and relation to Plaintiffs' inaction in existing civil lawsuit against L&A."

Both respondents thereafter filed motions for terminating sanctions. On March 7, 2023, the trial court denied the motions without prejudice but deemed admitted the Lee Firm's requests for admission. We have no evidence in the record that either Attorney Collins or Attorney Aplin notified the trial court at the March 7 hearing about McFarlin's disciplinary complaint.

On April 9, 2023, McFarlin was ordered inactive and he was deemed ineligible to practice law. Meanwhile, trial in the case was set to begin on May 22, 2023.

On May 10, 2023, Attorney Collins sent a letter by e-mail and mail to McFarlin, advising that McFarlin had failed to arrange an issue conference pursuant to Orange County Superior Court, Local Rules, rule 317. Attorney Collins used both methods of delivery because his firm "had prior mailings to the . . . . mailing address for McFarlin, LLP returned as undeliverable."

---

[4] We could find no corresponding entry in Attorney Aplin's time records about this conversation, but the records he submitted to the trial court skipped from January 2023 to March 2023, omitting February.

On May 15, 2023, Attorney Aplin filed a motion in limine renewing his request for terminating sanctions. The motion was only served on McFarlin, not on Ms. Prato or Prato LLC individually. Attorney Aplin made passing reference to McFarlin's disciplinary proceedings in his briefing on the motion in limine, and in his supporting declaration.

The following day, on May 16, Attorney Collins filed a declaration regarding the failure to arrange an issue conference. Again, the declaration was only served on McFarlin. It was not sent to Ms. Prato or Prato LLC. Attorney Collins also made brief reference to McFarlin's disciplinary status, advising the court that McFarlin was ordered inactive on April 9.

As this was going on, Ms. Prato, aware that her trial date was approaching, had been trying to contact McFarlin to find out the status of preparations. In a declaration later filed with the court, she stated that she became concerned and physically went to McFarlin's office and found it empty. No one was answering the office phones. She then tried to find other counsel to help her, and was at some point told that McFarlin was being disbarred and that he had "left many clients high and dry."

On May 22, the respondents appeared for trial, but unsurprisingly, neither the plaintiffs nor their counsel appeared. The court granted Gioia's and the Lee Firm's oral motion for a judgment of dismissal under section 581, subdivision (b)(5). The dismissal without prejudice was thereafter entered by the court on June 2, 2023. The clerk transmitted the judgment of dismissal electronically to McFarlin only.

On or about June 13, 2023, Attorney Aplin served a notice of entry of dismissal, by mail and electronically, on McFarlin–not on Ms. Prato personally.

8

On or about June 15 and June 16, 2023, respectively, Gioia and the Lee Firm filed motions for attorney fees against Ms. Prato and Prato LLC jointly and severally. Gioia sought over $42,000 in fees and the Lee Firm sought a little over $28,000. The Lee Firm's fee motion was set to be heard on September 18, 2023, and Gioia's fee motion on November 6, 2023. Both motions were served by mail to McFarlin's office, not to Ms. Prato or Prato LLC personally.

On July 1, 2023, McFarlin was suspended by the State Bar for failure to pay fees, and his status still showed on the website as ineligible to practice law. On August 28, 2023, his status was updated to indicate that he was once again ordered inactive and still ineligible to practice.

Gioia's and the Lee Firm's motions came on for hearing before Judge Richard Oberholzer on November 6, 2023. Judge Oberholzer allowed respondents a continuance "for proper service on Plaintiffs."[5] The hearing was continued to December 18, 2023.

Both Attorney Aplin and Attorney Collins served notice of the hearing, along with notices under section 286 demanding Prato LLC and Ms. Prato appoint new counsel for the hearing. Attorney Aplin mailed the notice to Ms. Prato directly on November 15, 2023. Attorney Collins did the same on November 22, 2023.

On December 11, 2023, the case came up for a status conference, with Acting Supervising Judge Walter Schwarm presiding. The court set the matter to discuss Prato LLC's legal representation. Ms. Prato appeared and told the court she intended to hire a new attorney to represent her and Prato

---

[5] This hearing was not transcribed by a court reporter so we do not know what prompted the request for a continuance.

LLC. The court continued the hearing on the fee motions to January 22, 2024, and told Ms. Prato it expected new counsel to be retained by then.

One day later, on December 12, 2023, Attorney Collins mailed a copy of the notice of entry of dismissal (from June) directly to Ms. Prato.

On January 11, 2024, Ms. Prato and Prato LLC substituted new counsel, David L. Chaffin, who filed opposition to the fee motions.

In the oppositions, Attorney Chaffin argued that respondents had failed to give Ms. Prato and Prato LLC notice under section 286 of the need to appoint new counsel or appear in propria persona at trial.[6] He argued respondents could not be prevailing parties for purposes of the attorney fee provision. Attorney Chaffin filed a declaration with the oppositions, attaching a print-out from the State Bar website showing McFarlin had been ineligible to practice law since April.[7] Ms. Prato also filed a declaration to state that she had received no notice from McFarlin or respondents' attorneys that she needed to obtain new counsel prior to trial.

The trial court, Judge Jonathan S. Fish presiding, nonetheless granted both of the fee motions, awarding Gioia $42,092.20 and the Lee Firm $28,175 in fees jointly and severally against Ms. Prato and Prato LLC. The court indicated it was exercising its discretion to find the respondents were

---

[6] Attorney Chaffin also argued that respondents were not prevailing parties because the dismissal of the lawsuit was without prejudice. Ms. Prato does not highlight this issue on appeal so we do not address or resolve it.

[7] As far as we can discern from the record, this was the first time written documentation of McFarlin's disciplinary status was presented to the court.

prevailing parties despite the dismissal being involuntary. It did not address the section 286 issue.

It is the fee award which Ms. Prato now appeals.[8]

DISCUSSION

I.

STANDARD OF REVIEW

*A.  An Abuse of Discretion Standard Governs*

Ms. Prato argues the trial court's award was not reasonable. "We review attorney fee awards on an abuse of discretion standard. 'The "experienced trial judge is the best judge of the value of professional services rendered in his court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong."' [(*Serrano v. Priest* (1977) 20 Cal.3d 25, 49.)] 'Fees approved by the trial court are presumed to be reasonable, and the objectors must show error in the award.' (*Consumer Privacy Cases* (2009) 175 Cal.App.4th 545, 556.)" (*Laffitte v. Robert Half Internat. Inc.* (2016) 1 Cal.5th 480, 488.) However, an appellant may show an abuse of discretion "when the [fee] award shocks the conscience or is not supported by the evidence." (*Jones v. Union Bank of Calif.* (2005) 127 Cal.App.4th 542, 549–550.)

---

[8] While the notice of appeal states that it is from the judgment after court trial, the briefing focuses on the award of attorney fees. Thus, we conclude Ms. Prato appeals only the fee award and not the underlying judgment.

11

*B. Ms. Prato Argued Not Only That the Amount of Fees Was Unreasonable, But That the Fact of the Award Itself Was Unreasonable*

There are two aspects to Ms. Prato's reasonableness argument. First, she claims it was excessive to award respondents the amounts they sought because they defended the litigation practically unopposed by McFarlin. She further argues the fee award has a devastating financial impact on her, and that respondents behaved in an "ethically questionable" manner by failing to ensure that she was informed when they knew about her counsel's lack of communication.

When we questioned respondents' appellate counsel (Attorneys Aplin and Collins) on the latter point at oral argument, they seemed taken aback. Attorney Aplin argued McFarlin's disciplinary status and its repercussions were irrelevant to and outside the scope of the appeal. This is simply not accurate. We quote directly from Ms. Prato's opening brief: "Ethical Considerations: The respondents' counsel was aware of the communication breakdown between Ms. Prato and her former attorney but did not take steps to address this issue, which could be seen as ethically questionable. A reasonable attorney would have ensured that a self-represented party was adequately informed, especially when significant financial liabilities were at stake." We find this statement, coupled with the arguments made in Ms. Prato's oppositions below, was sufficient to raise the issue of section 286 notice.

## II.

### RESPONDENTS FAILED TO PROVIDE REQUIRED NOTICE UNDER SECTION 286 TO PLAINTIFFS BEFORE THEIR CASE WAS DISMISSED

"When an attorney dies, or is removed or suspended, or ceases to act as such, a party to an action, for whom he was acting as attorney, must,

before any further proceedings are had against him, be required by the adverse party, by written notice, to appoint another attorney, or to appear in person." (§ 286.) Such "notice must be given under that section, not when an attorney 'ceases to act as such' in a particular piece of litigation, but when he ceases to practice as an attorney." (*Jones v. Green* (1946) 74 Cal.App.2d 223, 231.)

"[T]he obvious purpose of section 286 is to provide for notice to a party who might otherwise be taken unawares. Like any other legal right, this protection may be waived [Citations.]." (*California Water Service Co. v. Edward Sidebotham & Son* (1964) 224 Cal.App.2d 715, 736.) Our Supreme Court has stated, however, that it would be prejudicial and injurious to a party if her attorney is rendered unable to practice and the opposing party fails to provide the notice required under section 286. If the unrepresented party then fails to appear at a proceeding in which an adverse action is taken against her, the failure to give timely notice would represent a serious flaw in the proceedings. (See *Nicol v. San Francisco* (1900) 130 Cal. 288, 288–289, dictum.) Indeed, when a party is aware that his or her opponent is without representation, that party must give notice under section 286. (See *McMunn v. Lehrke* (1915) 29 Cal.App. 298, 307–308.)

In this case, counsel for both respondents advised the court prior to trial that they had been trying for months to get in contact with or obtain a response from McFarlin, and neither of them had been successful.

According to the records later filed with the court by Attorney Chaffin on Ms. Prato's behalf, disciplinary charges were filed against McFarlin on January 25, 2023, and by April 9, 2023, he was ordered inactive. The record shows Attorney Aplin and Attorney Collins first advised the court about McFarlin's proceedings on or about May 16, 2023, with trial scheduled

13

to begin on May 22, 2023. They sent no section 286 notice to Ms. Prato or Prato LLC, who never appeared for trial; their case was therefore dismissed. To our estimation, the failure to give notice prior to trial was injurious and prejudicial.[9]

In the lower court, respondents argued Ms. Prato knew about the May 22 trial date but still did not appear. Despite the fact McFarlin was ordered inactive by April 9, they maintained they were excused from giving Ms. Prato notice under section 286 because McFarlin was not formally suspended from the practice of law until July 1, 2023. Thus, they argued, section 286 notice was not required until after trial. We find these arguments both disingenuous and lacking in merit.

As a baseline matter, Prato LLC, being a corporate entity, could not represent itself at trial or appear through Ms. Prato. As such, it could not reasonably be expected to appear on May 22 if its counsel was ineligible to practice law, regardless of what Ms. Prato did or did not know or could or could not do. At a minimum, Prato LLC was entitled to notice.

But even as to Ms. Prato, who could potentially appear in propria persona, section 286 notice was due prior to trial. A client's awareness of a trial date alone is an insufficient substitute for section 286 notice. A litigant represented by counsel is not the same as a self-represented litigant, who can be held accountable for failures to comply with procedure. Litigants hire

_____

[9] According to Business & Professions Code sections 6180 and 6180.2, the State Bar or the superior court may act in order to have the court take jurisdiction over the law practice of an attorney who becomes an inactive licensee. We do not know if these procedures were being used in this case. There is no evidence of it in the record and it is hard to imagine that Ms. Prato would have ended up with the same result if they were.

14

counsel in order to assist them in navigating a very complex system. If it could be assumed they could navigate it themselves, it might obviate the need for counsel.

Ms. Prato indicated in her declaration opposing attorney fees that she, like respondents' counsel, had been unable to reach McFarlin prior to trial. She was not informed by McFarlin or respondents' counsel that she needed to find a new attorney to appear. Indeed, it was not until she retained new counsel that she discovered the extent of the situation. It appears she simply was uncertain as to how to proceed, and section 286 notice could have given her necessary direction.[10]

Respondents also fail to appreciate the legal impact of the State Bar's action of placing McFarlin on inactive status in April 2023. Pursuant to Business & Professions Code section 6006, inactive licensees are not entitled to practice law, "and the involuntary enrollment of an attorney on inactive status thus operates as a temporary suspension from the practice of law." (*Conway v. State Bar* (1989) 47 Cal.3d 1107, 1111.) McFarlin was rendered inactive and ineligible to practice law on April 9, 2023. For purposes of section 286, he was effectively "removed or suspended" by the time trial rolled around on May 22, 2023. He lacked capacity to represent his clients, and they were entitled to section 286 notice under these circumstances.

At oral argument herein, counsel pointed out that Ms. Prato was purportedly being represented by McFarlin LLP as a law firm, and not just McFarlin alone. Counsel is correct that the retention of an attorney in a law

---

[10] The record bears this out; when respondents finally did give section 286 notice prior to the hearing on the attorney fee motions, Ms. Prato filed a substitution of attorney form and Attorney Chaffin filed oppositions.

15

firm generally constitutes the retention of the entire firm. (See *PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP* (2007) 150 Cal.App.4th 384, 392.) But it is a moot point in this instance. First, we have no evidence there were any other attorneys at McFarlin LLP besides McFarlin. The listing of another attorney, in this case Fernando Leone, does not itself establish that Mr. Leone was affiliated with McFarlin LLP. And there is no evidence to show McFarlin LLP was even operational during the relevant timeframes. Ms. Prato averred that when she visited the McFarlin LLP offices herself, no one was there, and no one was answering the phones.

In fact, counsel's argument rings all the more hollow because they themselves had sufficient information to understand that McFarlin LLP was not operational. Both Attorney Aplin and Attorney Collins knew they had not been able to contact McFarlin for many months. Attorney Collins knew that his letters to McFarlin were being returned as undeliverable, and that he had never even spoken to McFarlin. The two attorneys discussed McFarlin's disciplinary proceedings in February, three months before the May 22, 2023 trial date. Indeed, Attorney Collins knew enough to advise his client "regarding State Bar disciplinary action against Plaintiff's counsel and relation to Plaintiff's inaction in existing civil lawsuit against L&A." Both attorneys knew enough at the time of trial to have raised the issue with the court before seeking a dismissal. Instead, it appears they took advantage of the situation to benefit their clients and themselves.

16

## III.

### Because The Dismissal Was Entered Without Section 286 Notice To A Party Who Clearly Had Been Abandoned By Her Counsel, It Was An Abuse Of Discretion For the Court To Award Attorney Fees To Respondents Under The Contract Provision

"Except as provided for by statute, compensation for attorney fees is left to the agreement of the parties. (Code Civ. Proc., § 1021.) Civil Code section 1717 [] provides that reasonable attorney fees authorized by contract shall be awarded to the prevailing party as 'fixed by the court.' The trial court has broad discretion to determine the amount of a reasonable fee, and the award of such fees is governed by equitable principles. (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1094–1095.)" (*EnPalm, LLC v. Teitler* (2008) 162 Cal.App.4th 770, 774.) In this case, the phrase "equitable principles" takes on great importance, because respondents' actions did not comport with such principles.

We acknowledge that the fee provision here, at first blush, would entitle the respondents to their fees, as it is extremely broad: "If any Party or Broker brings an action or proceeding involving the Premises whether founded in tort, contract or equity, or to declare rights hereunder, the Prevailing Party (as hereafter defined) in any such proceeding, action, or appeal thereon, shall be entitled to reasonable attorneys' fees." The provision states that a prevailing party "shall include, without limitation, a Party or Broker who substantially obtains or defeats the relief sought, as the case may be, whether by compromise, settlement, judgment, or the abandonment by the other Party or Broker of its claim or defense." Here, the Lee Firm and Gioia were acting as the broker, and the complaint against them involved the premises. According to the provision's language, they would have been the

17

prevailing party because Ms. Prato had seemingly abandoned her claims, and they were able to obtain a dismissal.

However, we must not forget that an attorney fee provision in a contract is subject to the same rules of interpretation as contracts generally. And "[i]nterpretation of a contract 'must be fair and reasonable, not leading to absurd conclusions. [Citation.]' (*Transamerica Ins. Co. v. Sayble* (1987) 193 Cal.App.3d 1562, 1566.) 'The court must avoid an interpretation which will make a contract extraordinary, harsh, unjust, or inequitable. [Citation.]' (*Strong v. Theis* (1986) 187 Cal.App.3d 913, 920–921.)" (*ASP Properties Group, L.P. v. Fard, Inc.* (2005) 133 Cal.App.4th 1257, 1269.)

The record here reflects that Ms. Prato's complaint was dismissed not because she had abandoned her claims, but because her counsel had abandoned her. It would shock the conscience to award attorney fees against such a party.

It would also represent a windfall to respondents, who were aware of the circumstances but failed to give the notice they were required by law to give until it was too late to make a difference. The judgment of dismissal was entered on June 2, 2023, and under section 473, subdivision (b), Ms. Prato had six months from that date to vacate the dismissal. Yet respondents' counsel did not even give Ms. Prato direct notice of the judgment of dismissal until late November 2023, around the Thanksgiving holiday season. This gave her barely any time to mount a defense to the dismissal, and only enough time to file opposition to the fee motions.

Because the court was made aware of the disciplinary proceedings, and because Ms. Prato's counsel invoked section 286 in opposing the fee motions, we find it was an abuse of discretion for the court to grant the motions.

18

## DISPOSITION

The judgment is reversed and the matter remanded with directions to reconsider respondents' motions for attorney fees, taking into account our interpretation of section 286 herein. Appellant to recover her costs on appeal.

MOORE, ACTING P. J.

WE CONCUR:

MOTOIKE, J.

SCOTT, J.